[No. 2280.   Decided December 8, 1896.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD .H. STRAUB, *Appellant*.

CONVICTION IN ABSENCE OF PLEA — RECEPTION OF VERDICT ON SUNDAY — CHANGE OF VENUE — JURY LIST — SELECTION — CHALLENGE OF JUROR — MURDER IN FIRST DEGREE — INSTRUCTIONS.

Where a defendant, without objection, enters upon the trial of a criminal case, in which he has failed to enter a plea, and the case is tried on the merits by the prosecution and defense, as if a plea of not guilty has been interposed, and the instructions of the court give the jury to understand that every material fact charged in the information is in issue, such error is without prejudice, being a mere irregularity not affecting any substantial rights of the defendant.

The objection that defendant has been convicted in a criminal case, without any plea having been interposed by or for him, cannot be raised for the first time on appeal.

Where a plea to a criminal information has actually been made but not recorded, and the record has been subsequently corrected by the trial court by a *nunc pro tunc* order, the want of plea in the original record cannot be urged as ground of reversal on appeal.

Art. 4, §6, of the constitution, which provides that superior courts "shall always be open except on non-judicial days" and that "injunctions and writs of prohibition and *habeas corpus* may be issued and served on legal holidays and non-judicial days," cannot be construed as prohibiting the reception of a verdict on non-judicial days, since such act is a ministerial, and not a judicial one.

The refusal of the court to grant a change of venue is not ground of reversal, except upon a showing of an abuse of the discretion lodged in the court in such matters.

Upon an application for a change of venue, it is not error to re-
fuse to grant an oral examination of witnesses whose affidavits have
been submitted in the matter.

The fact that the county commissioners selected less than the
names of one hundred persons to serve as petit jurors during a cer-
tain year, is not ground of challenge to the panel, under Code Proc.,
§ 58, giving the right to select less, " if from any cause the county
commissioners are unable to select the full number," even though
no showing is made in the certificate of the commissioners to the
clerk of the superior court, setting forth the reason why such less
number had been selected.

A change in the law providing for the selection of a list of jurors,
is not ground of challenge to the panel of jurors selected under the
former law, when it does not appear that any material interest of
the defendant is affected thereby, and the new law especially pro-
vides that it is the intention of the act that the selection under the
old law should remain intact, unless for some good reason the
county commissioners see fit to set it aside and make a new selec-
tion.

It is not ground of challenge for cause to a juror on the ground of
entertaining an opinion as to the guilt or innocence of a defendant,
when the juror has not voluntarily testified to such fact, but has
been led into the expression of an opinion by the adroit question-
ing of the attorneys for the defense.

A charge to the jury that murder in the first degree is the crime
mentioned in the information in the case, and is where a person
purposely and of his deliberate and premeditated · malice kills
another, is not erroneous on the ground that the language used as-
sumes that the crime of murder in the first degree had been com-
mitted.

A charge to the jury in a prosecution for homicide that " malice is
deliberate and premeditated when it has been dwelt upon at all in
the mind and when the motive or consideration moving to his act
has been to any extent mentally weighed. Premeditation may be
as quick as thought in the mind of man," is not objectionable on
the ground of obliterating the distinctions between murder in the
first and second degrees. (*State v. Rutten*, 13 Wash. 203, distin-
guished).

Appeal from Superior Court, San Juan County.—
Hon. John R. Winn, Judge. Affirmed.

*Charles F. Repath,* for appellant.

*W. H. Thacker*, Prosecuting Attorney, *H. S. King*, and *Thomas G. Newman*, for The State.

The opinion of the court was delivered by

DUNBAR, J.—Defendant was convicted in the lower court of murder in the first degree, and the death penalty was imposed. An appeal has been taken to this court by a bill of exceptions, and many errors are alleged.

The first assignment is that the trial, verdict and sentence of death are void and illegal, for the reason that the record fails to show that the defendant ever entered a plea to the information. While it must be confessed that many authorities are cited to sustain this contention, and while, in the earlier history of criminal trials and especially under the common law practice, such omission was almost uniformly held to be reversible error, we think, under the system adopted by the code in this state, that such an omission is purely technical, that it does not affect any of the substantial rights of the defendant, and that, if otherwise properly convicted, the judgment should not be reversed. Indeed, this is the holding of many modern courts under statutes similar to ours. The record shows that the defendant demurred to the indictment; that on October 3d he asked for further time in which to plead, being present both in person and by counsel; that time was given for one day, or until October 4; that on October 4 the defendant, on being called on to present a plea, again asked for further time, which was granted, and the time extended one day more, or until October 5. After that he filed a motion for a change of venue and court adjourned until October 8. Subsequently the defendant interposed a challenge to the jury, had subpœnas issued

for witnesses in his own behalf, introduced evidence
in his behalf and testified himself, and in every way,
without objection, entered into the trial of the case
on the merits; and the case was treated, both by the
prosecution and by the defendant, as though a plea
had been entered.  Defendant availed himself of
privileges which he would not have been entitled to
on any other theory.  The plea of not guilty is a de-
nial of all material allegations and simply puts them
in issue.  According to the record the whole case was
tried upon this theory.  Under the instructions of the
court the jury understood that every material fact was
in issue, and that all of said facts must be proven be-
fore conviction could follow.  Under such instruc-
tions the defendant went into the trial with the
presumption of innocence in his favor, and the *onus*
was upon the state throughout the trial and up to the
time of rendition of the verdict to exactly the same
extent as it would have been if the plea had been
formally entered.  So that the defendant actually had
the benefit of the plea of not guilty though it were not
formally entered.  It affirmatively appears, then,
from the record, that this error, if error at all, was
without prejudice; that it was a mere irregularity
which did not affect any substantial rights of the de-
fendant.  And the same law, which gives him the
right to appeal to this court at all, provides in § 1448 of
the Code of Procedure, that "the supreme court shall
hear and determine all causes removed thereto, in
the manner hereinbefore provided, upon the merits
thereof, disregarding all technicalities."  Moreovor,
under the special provisions of our statute, if the de-
fendant does not see fit to plead after the overruling
of the demurrer, it is the duty of the court to enter
judgment even without trial, except in cases where it

is necessary to ascertain the degree of offense.  Sec. 1282 is as follows:

" If the demurrer is overruled, the defendant has a right to put in a plea.  If he fails to do so, judgment may be rendered against him on the demurrer, and if necessary, a jury may be impaneled to inquire and ascertain the degree of the offense."

Nor does this conflict with § 1290, which provides that:  " If the defendant fail or refuse to answer the indictment or information by demurrer or plea, a plea of not guilty must be entered by the court;" but rather strengthens the construction given above, that, if the demurrer is denied, further plea· is unnecessary and the result will be the same as in a civil action, where, upon the overruling of the demurrer to a complaint, the defendant refuses to answer.  But, under the section just above quoted, the plea of guilty is entered by the court only when the defendant fails or refuses to answer the indictment or information either by demurrer or plea.

In addition to this, this question was not raised in the lower court.  Many of the cases cited by the appellant, even if we should hold with them, are where the question was raised upon a motion in arrest of judgment, or a motion for a new trial, where the matter was brought to the attention of the trial court so that it could be corrected there.  But in this case the first mention that is made of this alleged error is in the brief of appellant in this court,· and the motion for a new trial being especially intended to direct the attention of the trial court to the error complained of and his attention never having been so directed, under the rule announced in numerous decisions of this court, it is too late to raise it now.

A third reason for refusing a reversal for this alleged

error is the fact that it appears from a supplemental record afterwards certified by the court, that the omission to plead was not an omission in fact but an omission simply of the record. Upon proper notice to correct the record, it plainly appears that the plea was actually made but failed to be recorded, and the trial court made an order of entry *nunc pro tunc*, showing what the actual facts of the case were, and correcting the record in this respect. Any one of the reasons mentioned above would be sufficient to defeat the motion for reversal on this ground.

The next error assigned is that the verdict and sentence are void because the verdict was received and recorded on a non-judicial day, viz , Sunday. It is admitted by the appellant that the weight of authority is to the effect that the receiving of a verdict is not a judicial, but merely a ministerial act, which may be done on a non-judicial day. It is also conceded that we have a statute in this state expressly authorizing courts to receive verdicts on non-judicial days. But it is contended that § 6 of art. 4 of the constitution, which prescribes the jurisdiction of the superior courts, and especially that portion of the section which provides that "they [such courts] shall always be open except on non-judicial days," and that "injunctions and writs of prohibition and *habeas corpus* may be issued and served on legal holidays and non-judicial days," excludes the idea that anything else can be done by the court on non-judicial days; and that the court cannot be open on non-judicial days except in matters of injunction, prohibition and *habeas corpus*. We do not think that the constitutional provision is susceptible of this construction; but think, as contended by the respondent, that the provision that courts shall always be open, except on

non-judicial days, in no wise affects the rule, which would obtain in the absence of any such provision, that they could properly be open on such days for the performance of non-judicial acts such as the reception of verdicts.  The object of the constitution, undoubtedly, was not to affect the law which already existed in relation to the disability of courts to transact business on non-judicial days, but to make a provision that the courts should always be open for business *except* on non-judicial days.

The third assignment of error, viz., that the court erred in overruling a motion for a change of venue, is also without merit.  This is a matter which is largely addressed to the discretion of the trial court, and an examination of the record fails to convince us that that discretion was abused.

The fourth assignment, that the court erred in overruling appellant's demurrer to the information, has been passed upon so many times by this court, and is so avowedly presented here for the purpose of saving a right to appeal to the supreme court of the United States, that it is unnecessary to discuss it.

The fifth allegation, that the court erred in denying defendant's motion for an examination *ore tenus* of the compurgators Churchill and Jansen, on the motion for a change of venue, is equally without merit.

It is strenuously insisted by the appellant that the 6th assignment, viz., that the court erred in overruling defendant's challenge to the panel of jurors, should have been sustained.  It appears from the record that two members of the board of county com. missioners of San Juan county certified a list of names of persons selected by them to serve as petit jurors for 1895, and filed the list on January 15, 1895, with the clerk of the superior court.  This list, it is

conceded by both appellant and respondent, was selected under the act of 1888, before the change of the law in 1895. It appears that a list of ninety-seven persons was selected to serve as petit jurors, and it is the contention of the appellant that he was entitled to have the jury drawn from a selection of one hundred persons as by the law required. Sec. 58 of the Code of Procedure provides that every board of county commissioners shall select from the persons in their county qualified to serve as petit jurors, the names of one hundred persons to serve as petit jurors for the ensuing year; " provided, that if from any cause the county commissioners are unable to select the full number of names in this section provided for, they shall select such less number as they may agree upon." So that the fact that this selection was made of ninety-seven instead of one hundred is not prejudicial to the appellant, because the law especially provides that the commissioners shall select a less number, if there is occasion so to do.

But appellant contends that he is injured because the commissioners did not included in their certificate to the clerk of the superior court the reason why such less number had been selected. We cannot understand how this certificate affects the appellant one way or the other. The alleged error is simply an irregularity in the procedure in which he has no vested right.

It is further contended by appellant that he had a right to have the jury drawn from a list of three hundred names selected by the board of county commissioners, under the provisions of ch. 78, Laws 1895, p. 139, which is an amendment to the law just above mentioned. But it appears that the selection in this instance was made prior to the passage of the law of

1895; and § 5 of that act plainly indicates that it is the intention of the act that the selection under the old law should remain intact unless for some good reason the county commissioners see fit to set it aside and make a new selection ; for the last section of the act asserts as a reason for the emergency clause, that in some of the counties "the number of jurors now authorized to be selected is insufficient to transact the business of the courts." Besides, this court has held so many times, that it seems that we ought not to be called upon to further discuss this character of questions, that these conditions in regard to the selection of jurors are directory, and that no litigant has a vested right in the procedure. Certainly, in the absence of a showing that a material interest had been affected, the judgment would not be reversed for an irregularity so far as the procedure is concerned.

Assignments 7, 8, 9, 10, 11 and 12 are in relation to the overruling of defendant's challenge for cause to certain jurors. We have investigated these examinations and think that no error was committed. Where this court has had occasion to reverse judgments for the reason that jurors had been retained over the objection of defendants, they were cases where the jurors had themselves testified that they entertained opinions in regard to the guilt or innocence of the defendant, and where the court or the prosecution, by cross-examination, had led the jurors to state that they could lay aside these opinions and try the defendant impartially. But in this case it is evident from the examination that the jurors had been led to the expression of an opinion by the adroit questioning of the attorneys for the defense, and in each instance we think the challenge was properly refused.

The householder question has already been passed

upon by this court and we will not notice it further here.

We think that no· error was committed by the court in overruling the defendants's objection to the question asked witness Nordyke on cross-examination by the state.

The only other assignment, which is not involved in what we have already said, is alleged error of the court in its instructions to the jury. The appellant finds fault with the court for stating to the jury in its instructions that "murder in the first degree is the crime mentioned in the information in this case, and is where a person purposely and of his deliberate and premeditated malice kills another," on the ground that the language used by the court assumes that the crime of murder in the first degree had been committed. This, we think, is a strained construction to be placed upon the language of the court, and the language is entirely without prejudice in any way to the defendant.

The main contention of the appellant on the instructions is that they are in conflict with the announcement made by this court in *State v. Rutten*, 13 Wash. 203 (43 Pac. 30). In that case the language of the lower court was as follows :

"Premeditated malice is where the intention to un-"lawfully take life is deliberately formed in the mind "and that determination meditated upon before the ·"fatal stroke is given. There need not be any ap-"preciable space of time between the formation of "intention to kill and killing. They may be as in-"stantaneous as successive thoughts. It is only neces-"sary that the act of killing be preceded by the "concurrence of will, deliberation and premeditation "on the part of the slayer."

This language was criticized by this court for the

reason that, in our opinion, it abolished or wiped out the distinction between murder in the first degree and murder in the second degree. The case was reversed, but not for this reason, there having been no exceptions taken to the instructions mentioned, and the criticism was simply a suggestion of the court to guide the judge in the new trial. We are, however, satisfied with what was said in that case, but think the instruction there given can be distinguished from those in the case at bar. Here, the instruction on this subject was as follows:

"I said a moment ago I would define to you the " different terms of deliberation, premeditation, pur- " posely and malice. I have already defined to you " what malice is. Purposely, as used in these instruc- " tions, means an intentional doing with the intent of " the party who does the act to do that certain thing. " Deliberation is the mental operation of weighing " motive or consideration that makes for or against an " inclination of the proposed act or line of action. " Premeditation is the mental operation of thinking " upon an act before doing it or upon an inclination " before carrying it out."

And the culmination of this instruction, which is specially objected to by the appellant, is as follows:

"Malice is deliberate and premeditated when it has " been dwelt upon at all in the mind and when the mo- " tive or consideration moving to his act has been to " any extent mentally weighed. Premeditation may " be as quick as thought in the mind of man."

Although "premeditation may be as quick as thought," this instruction does not do away with the idea of deliberation, which the instruction in the Rutten case did, because it does not connect defendant's premeditation directly with the act, and does not instruct the jury that there need be no appreciable

space of time between the formation of the intention to kill and the killing, or that it is no matter how quickly the premeditation is followed by the act of killing, which was the language objected to in the case cited. Premeditation must be as quick as thought, for any conviction or intention that enters into the mind of man enters with the rapidity of thought. It has to enter there at some particular moment. The intention to kill may come instantaneously to the mind; but this instruction does not tell the jury that that intention must be instantaneously carried into execution; or, in other words, so far as the instruction complained of is concerned, this premeditation on the part of the appellant may have been in his mind a week or a month or any length of time before the carrying of it into execution by the killing, and would not thereby obliterate the distinctions which the law creates between murder in the first degree and murder in the second degree, by eliminating the idea of deliberation.

We think that no error was committed by the court in refusing the instructions asked for by the defendant, as the instructions given completely covered the law of the case, and that no error was committed by the court in its instructions.

Finding no error anywhere in the record, the judgment must be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.