[No. 2714.  Decided December 3, 1897.]

# THE STATE OF WASHINGTON, *Respondent*, v. E. L. MOODY, *Appellant*.

BIAS OF JUROR — IMPRESSION AS TO GUILT OF ACCUSED — HOMICIDE — INSTRUCTIONS DEFINING DEGREES — PREMEDITATION — EVIDENCE — DYING DECLARATIONS — THREATS — EXCLUSION OF DYING DECLARATION FROM JURY ROOM.

A juror is subject to challenge for actual bias, when he has an impression as to the guilt of the accused which it would take evidence to remove, and when he does not feel able to accord accused the presumption of innocence until his guilt is proven.

In a prosecution for homicide, an instruction does not sufficiently point out the distinction between murder in the first and second degrees, nor correctly define the element of deliberation and premeditation, when it charges the jury that "as to the length of time necessary for deliberation and premeditation, you are instructed that no appreciable space of time need elapse between the forming of such intent and the infliction of the fatal wound;  all that is necessary is, that the deliberate and premeditated intent be formed before the fatal wound is inflicted.  It matters not if the wound be inflicted immediately after the forming of the intent.  The forming of the deliberate and premeditated intent, and the inflicting of the mortal wound, may follow each other as rapidly as successive thoughts of the mind."

A statement in a dying declaration that the accused had made prior threats against deceased are inadmissible in evidence, being no part of the *res gestae*.

The refusal of the court to instruct that the portion of a dying declaration showing prior threats by the accused should be disregarded was prejudicial error, and cannot be presumed harmless from the fact that it was cumulative and merely corroborative of the testimony of another witness.

Upon a trial for homicide, it is error to permit the dying declaration of deceased to go to the jury room for investigation by the jury, on the same principle that witnesses and depositions are excluded from the jury room.

Appeal from Superior Court, Chehalis County.—Hon. MASON IRWIN, Judge.  Reversed.

*George D. Schofield,* for appellant:

Previous threats in dying declarations are inadmissible for any purpose. *Reynolds v. State,* 68 Ala. 502; *Jones v. State,* 71 Ind. 66; *Ben v. State,* 37 Ala. 103; *State v. Wood,* 53 Vt. 560; *Merrill v. State,* 58 Miss. 65; *Nelson v. State,* 7 Humph. 542; *State v. Draper,* 65 Mo. 335 (27 Am. Rep. 287); *Rex v. Mead,* 2 Barn. & Cr. 605; *People v. Fong Ah Sing,* 64 Cal. 253; *State v. Perigo,* 45 N. W. 399.

*W. H. Abel,* Prosecuting Attorney, *(W. I. Agnew,* of counsel), for The State.

The opinion of the court was delivered by

Dunbar, J.—The appellant was tried upon an information charging him with murder in the first degree, was found guilty as charged, and was sentenced to death, and an appeal is brought to this court alleging many errors. Most of the errors that are assigned by the appellant in this case have been passed upon by this court so often that we do not feel called upon to discuss them again, but will limit our investigation to those assignments which appeal to us as being meritorious, and which have not before been called to the attention of this court.

Assignment number nine is to the effect that the court erred in denying defendant's challenge for cause against juror Shafer. It appears from the record that the defendant's peremptory challenges were all exhausted. The examination of the juror Shafer on his *voir dire* was as follows, after omitting some preliminary questions:

" Do you know anything about the facts in this case, or what purport to be the facts?

A.—Well, what I read from the paper and talk with other people.

Q.—Did you hear what purported to be the facts in the case?

A.—To some extent.

Q.—Did what you hear form any impression upon your mind as to the guilt or innocence of this defendant?

A.—I think it did.

Q.—Have you still that impression?

A.—Well, as long until I hear contrary evidence I would.

Q.—Is that impression which you have upon your mind of such a nature as would require some proof or testimony to remove?

A.—Well, it would require some; of course, any story that was told would make some impression, another story would make a different.

Q.—Do you believe that notwithstanding any impression that you may have formed and may have at this time, in relation to the guilt or innocence of this defendant, you could sit as a fair and impartial juror and return a verdict in accordance with the law as given you by the court and the evidence as it shall come to you from the witness stand?

A.—I can.

Q.—Do you believe you could sit as a fair and impartial juror in the trial of this case?

A.—I can.

Q.—Have you at this time any prejudice for or against the state or defendant?

A.—I have not.

Q.—You may state whether or not your opinions are of such a nature that you would be prevented from returning a verdict of guilty in any case, upon which verdict there would be a punishment of death?

A.—I think not.

Q.—Are you in favor of enforcing the laws of this state in relation to capital punishment?

A.—I am.

Q.—You believe that notwithstanding any impression which you may have had in relation to the defendant's guilt or innocence, or any impression which you may now have,

that you could still sit as a fair and impartial juror in the trial of the case?

A.—I could.

Q.—Do you believe that from the beginning of this case until the close you could rid your mind and clear it of any such impressions that you may have had heretofore, and return your verdict solely in accordance with the law and evidence as it comes to you in the trial?

A.—I think I can.

Q.—Do you know any reason at all why you should not sit as a juror in the trial of this case?

A.—I do not.

The pertinent portion of the cross-examination was as follows:

Q.—From the conversations which you had at Elma, in this county, an impression was formed upon your mind, I believe you stated?

A.—Yes, sir.

Q.—And you still have an impression upon your mind at this time as to the guilt or innocence of the defendant?

A.—I have to some extent.

Q.—Is that opinion such as would require evidence to remove?

A.—Yes, sir.

Q.—Could you enter in and upon the trial of this case, prior to the giving of any evidence, and indulge your mind with the legal presumption that the defendant is presumed to be innocent until proven guilty? Can you enter upon the trial presuming the defendant to be innocent of the crime charged?

A.—Well, not as much as I read.

Q.—Then that impression which you now have upon your mind amounts to conviction, that is, your mind is convinced at the present, before entering upon the trial, as to the guilt or innocence of the defendant?

A.—Yes, sir, it is, providing what I hear is true; it is only mere talk; you might hear anything, at the same time I have an impression it was more or less true.

Q.—Did the people who purport to have these conversations with you tell you that this was true?

A.—Well, they told me—

Q.—Never mind what they told you, did they pretend to you to relate the facts and circumstances surrounding this affair?

A.—Yes, sir.

Q.—You still have that impression upon your mind?

A.—I have.

Q.—That impression is such as would take testimony to remove?

A.—It would.

Q.—That impression is such a one as would debar you from entering upon the trial of this case presuming the defendant to be innocent?

A.—Yes, sir.

Thereupon the examination was closed, the defendant challenged the juror for cause, which was resisted by the state, and the challenge was denied by the court. It appears from the whole examination of this juror that he had such an impression concerning the guilt or innocence of the defendant as would require testimony to remove; and while this court has said that a mere floating impression would not be sufficient to incapacitate a juror, the answers of the juror in this case plainly show that the impression, as he terms it, which he had formed, really amounted to a conviction, and a fixed and stable opinion in regard to the guilt or innocence of the defendant, for he stated that his mind was convinced as to the guilt or innocence of the defendant, and frankly confessed that it would take testimony to remove the impression which had been made upon his mind by what he had heard; **and further,** that such an impression would debar him from entering upon the trial of the case presuming the defendant to be innocent. If the statements of the juror, then, are to be taken as true, and the only object of the examination is to elicit the truth, it

can scarcely be gainsaid that the juror was not such an impartial juror as is guaranteed to the defendant by the constitution, for he had a right to be tried by a juror who would enter upon the investigation of the trial with the presumption attaching in his mind that the defendant was innocent, and not with the presumption that he was guilty, and that he would consider him guilty until he was proven innocent.

It seems to us that the case falls squarely within the rule announced by this court in *State v. Murphy*, 9 Wash. 204 (37 Pac. 420), where it was said:

" If a juror testifies that he has read a newspaper account and that, if such account be true, he believes the defendant to be either guilty or innocent, as the case may be, he manifestly would be a competent juror, for he has no fixed opinion as to whether the facts which have been related to him are true or not. Hence he approaches the examination of the case with a mind perfectly susceptible to receive the truth as it appears from the testimony presented. But where he states that he has heard a recital of the facts, whether by a newspaper or by an individual statement, and that he believes the facts stated, and from such statements that he is in a condition of mind that it would take evidence to remove the belief that he already entertains, then it seems equally manifest that he comes to the investigation of the case with a bias either for or against the defendant, and is therefore not, in the meaning of the law, an impartial juror."

In this case, if the juror had stated that he had heard a recital of the circumstances connected with this alleged murder, whether through newspapers or through conversation with individuals, and that, if what he had heard was true, he had an opinion as to the guilt or innocence of the defendant, such an answer would not have disqualified him from acting as a juror, but when he says that he has heard these things and believes them to be true, then certainly he has an opinion which would prevent him from entering up-

on the investigation of the case with such an unbiased mind as would permit him to come to a decision on the merits of the case upon the testimony presented at the trial, uninfluenced by what he had previously heard; and in this case the witness testified that he had an impression that what he had heard was more or less true. This was exactly the point that was before the court in *State v. Wilcox*, 11 Wash. 220 (39 Pac. 370), and there, in the discussion of that proposition, it was said by this court:

" If any juror should swear that, if the reports which he had heard were true, whether the reports came from newspapers or from individuals, he believed the defendant guilty or innocent, or that he had made up his mind as to his guilt or innocence, that would be one proposition; but where he answers in substance that he has read these reports and that he has heard this talk and that he *does* believe them to be true or untrue, as the case may be, that is altogether another proposition; and that is what this witness [juror] substantially testified to, either that he believed them to be true or untrue. If, as he said, he had talked with a friend of his who had been subpoenaed as a witness in the primary examination, and that friend related to him the facts concerning the crime, and from such relation he formed an opinion as to the guilt or innocence of the defendant; and if it is true, as he said, that if he went into the trial of this case, unless there were evidence to remove that opinion, he would have to act upon the opinion which he already entertained, then certainly he was not an impartial juror; and if the opinion was that the defendant was guilty, and the testimony of the state and the defense balanced, his verdict, according to his statement, would have to be that of guilty. In other words, the defendant would be deprived of the right which he has to be proven guilty beyond a reasonable doubt. He would not even have the benefit of the rule in a civil action of a preponderance of the testimony; but he would have the burden thrust upon him of proving himself innocent. And that is the logical result of that condition of mind in a juror which is exhibited by the ex-

pression that it would take evidence to remove the opinion which he already entertains."

And that is exactly the condition of the mind of the juror in this case, as shown by his testimony. The cases cited by the state in support of the action of the court in this case on this point, viz., *State v. Straub*, 16 Wash. 111 (47 Pac. 227); *State v. Carey*, 15 Wash. 551 (46 Pac. 1050), we do not think have any application to the contention in this case. This question has been so often before this court, and the reasons for rejecting this character of jurors was so fully set forth in the cases above cited, viz., *State v. Murphy*, and *State v. Wilcox, supra*, and in *State v. Rutten*, 13 Wash. 203 (43 Pac. 30), that it would be difficult to give any additional reasons on this subject. The doctrine of these cases was announced by this court before the trial of this cause, and had become the law of this state. The constitutional right of the defendant to be tried by an impartial juror having, we think, been denied by the court, it was such error as would necessitate a reversal of the cause. It is contended by the respondent that the challenge was not specific; but we think the examination of the juror fully advised the court that the challenge was for actual bias.

It is also alleged in assignment number fifteen that the court erred in instructing the jury upon the question of deliberation as follows:

" As to the length of time necessary for deliberation and premeditation, you are instructed that no appreciable space of time need elapse between the forming of such intent and the infliction of the fatal wound; all that is necessary is, that the deliberate and premeditated intent be formed before the fatal wound is inflicted. It matters not if the wound be inflicted immediately after the forming of the intent. The forming of the deliberate and premeditated intent, and the inflicting of the mortal wound, may follow

each other as rapidly as successive thoughts of the mind. If the deliberate and premeditated intent be formed before the fatal blow is given, that is sufficient, but you must be satisfied beyond a reasonable doubt that such intent did exist in the mind of the defendant before the fatal wound was inflicted."

It is contended by the appellant that this instruction is substantially the same as that given by the court in *State v. Rutten, supra,* which was held by this court to be inconsistent with our statute, which creates a distinction between murder in the first and second degrees, and we think this contention should be sustained. Reasons for holding such an instruction bad were given in that case, and it is not necessary to repeat them here. It is contended by the respondent that this case can be distinguished from the case of *State v. Rutten, supra,* and that it falls within the rule announced by the court in *State v. Straub,* 16 Wash. 111 (47 Pac. 227). In the last case cited, the court, in distinguishing these instructions, cited the instruction in the case of *State v. Rutten,* which was as follows:

" Premeditated malice is where the intention to unlawfully take life is deliberately formed in the mind, and that determination meditated upon before the fatal stroke is given. There need not be any appreciable space of time between the formation of intention to kill and killing. They may be as instantaneous as successive thoughts. It is only necessary that the act of killing be preceded by the concurrence of will, deliberation and premeditation on the part of the slayer."

The instruction in the *Straub case* was as follows:

." I said a moment ago I would define to you the different terms of deliberation, premeditation, purposely and malice. I have already defined to you what malice is. Purposely, as used in these instructions, means an intentional doing with the intent of the party who does the act to do that certain thing. Deliberation is the mental operation of weighing

motive or consideration that makes for or against an inclination of the proposed act or line of action. Premeditation is the mental operation of thinking upon an act before doing it or upon an inclination before carrying it out."

And that portion of the instruction which was specially objected to was as follows:     .

" Malice is deliberate and premeditated when it has been dwelt upon at all in the mind and when the motive or consideration moving to his act has been to any extent mentally weighed. Premeditation may be as quick as thought in the mind of man."

And this court said, in commenting upon this instruction, that

" Although 'premeditation may be as quick as thought,' this instruction does not do away with the idea of deliberation, which the instruction in the *Rutten case* did, because it does not connect defendant's premeditation directly with the act, and does not instruct the jury that there need be no appreciable space of time between the formation of the intention to kill and the killing, or that it is no matter how quickly the premeditation is followed by the act of killing, which was the language objected to in the case cited. Premeditation must be as quick as thought, for any conviction or intention that enters into the mind of man enters with the rapidity of thought. It has to enter there at some particular moment. The intention to kill may come instantaneously to the mind; but this instruction does not tell the jury that that intention must be instantaneously carried into execution; or, in other words, so far as the instruction complained of is concerned, this premeditation on the part of the appellant may have been in his mind a week or a month or any length of time before the carrying of it into execution by the killing, and would not thereby obliterate the distinctions which the law creates between murder in the first degree and murder in the second degree, by eliminating the idea of deliberation."

In fact, in the *Straub case* the jury were instructed that the motive or consideration moving to the act had to be to some extent mentally weighed, which is the very essence of premeditation or deliberation, but in the instruction in the case at bar this element of deliberation is entirely eliminated by the instruction of the court.

Authorities were cited by the learned counsel for the state sustaining the instructions given in this case. We were aware of the existence of these authorities when the rule announced in the *Rutten case, supra,* was promulgated by this court, but as we are convinced that such an instruction is not in harmony with our statutes we did not then, and we do not now, feel that they can consistently be followed. It follows, therefore, that the court committed reversible error in giving the instruction complained of.

The admission in evidence of the dying declaration of Mrs. Bunn is also alleged as error by the appellant. The court instructed the jury that such declaration should be given "just such credit as you believe under all the circumstances they are entitled to." This dying declaration included the assertion of a threat. The question was asked, "Had he ever threatened before to injure you?" and the answer was "Yes."

We think it may be conceded without a citation of authorities that prior threats are no part of the dying declaration; that they are no part of the *res gestae*, and therefore can not be admitted as a dying declaration of a deceased person. The universal rule is that the dying declarations are restricted to the act of killing and the circumstances directly preceding it and forming a part of the *res gestae*. See *State v. Wood*, 53 Vt. 560, and cases cited.

It is admitted by the attorneys for the respondent that previous threats are no part of the dying declaration as a general rule, and should be excluded therefrom, and if they

are the only evidence upon which premeditation and deliberation can be based, then it is reversible error to allow them to go to the jury. But it is claimed that the dying declaration in this particular was simply corroborative of the testimony of another witness, and had but little weight compared with her testimony; and that inasmuch as her testimony clearly justifies the finding, even if it were error to receive the same, it would be cumulative and harmless, the facts having been otherwise legally shown. But that would be a dangerous rule to announce, in the trial of criminal cases, especially. The court can not say whether it was the testimony of the witness Bertha Loetscher in this case, or the solemn announcement of the dying woman, that made the impression upon the minds of the jurors, or convinced them of the premeditation on the part of the defendant. We think the court erred in not instructing the jury that this part or portion of the dying declaration should be disregarded.

Again, it is claimed that the court erred in allowing the dying declaration to go to the jury room, for the investigation of the jury, over the objections of the appellant. We think without any question that this was reversible error. The statute does not permit witnesses or depositions to go to the jury room, and for the very best of reasons. And certainly the dying declaration is in substance a deposition of a witness, the solemnity of the occasion simply taking the place of the oath which is ordinarily administered to a witness who subscribes to a deposition. No cases are cited on this proposition, but we think it so plainly falls within the ban of the statute and of the law that the citation of authorities is unnecessary.

The court in this case is exceedingly loath to disturb the verdict of the jury and to reverse the judgment, but the errors complained of are, in our judgment, so palpable that

there is no other course left. The judgment will therefore be reversed with instructions to grant a new trial.

And in view of the fact that a new trial will be granted, we think it advisable to say that some testimony was allowed to be introduced in this case which probably, standing alone, might not be considered of sufficient importance to work a reversal, yet seems to us to have no bearing upon the material issues in the case; notably, the testimony of H. J. Bunn in relation to the number and ages of his children, found on page 158 of the statement of facts, and also his testimony (found on pp. 166, 167 and 168 of the statement of facts) in relation to certain trouble which he had with defendant, which does not seem to us to be in any way connected with defendant's attitude towards the deceased.

Other minor objections are made by the appellant to certain transactions occurring in the trial of the cause, but they probably will not arise in a new trial, and it will not be necessary to notice them here. But for the errors discussed, viz., the refusal to sustain the challenge to the juror Shafer, the instruction of the court in relation to premeditation and deliberation, the instruction of the court in relation to the dying declaration, and the admission of such dying declaration to the jury room, the judgment will be reversed.

SCOTT, C. J., and REAVIS, ANDERS and GORDON, JJ., concur.