[No. 3566. Decided November 19, 1900.]

THE STATE OF WASHINGTON, *Respondent,* v. ALFRED HAWKINS, *informed against as* ALFRED HAMILTON, *Appellant.*

CHANGE OF VENUE—PREJUDICE OF JUDGE—DISCRETION OF COURT.

Under the provisions of Bal. Code, §§ 6794, 6795, it is a matter within the discretion of the trial judge to refuse or grant a change of venue, when application therefor is made on the ground of the alleged prejudice of the judge; and his discretion is not restricted to the mere matter of granting a change to some other county, or to continuing the cause until a visiting judge may be called in, by reason of the language of § 6795, which provides that "when the affidavit is founded on prejudice of the judge, the court may, in its discretion, grant a change of venue to some other county, or may continue the cause until such time as it can be tried by another judge in the same county."

MURDER—INSTRUCTIONS—PREMEDITATION.

An instruction upon the subject of premeditation, in a prosecution for murder in the first degree, is proper, when it charges the jury that "no particular length of time need elapse before there can be deliberation or premeditation in an act. A single moment may be enough. It is sufficient if you find from the evidence, and beyond a reasonable doubt, that any length of time elapsed, no matter how short, sufficient to allow a design to be formed in the mind and that design to be deliberated upon and meditated over before carrying into effect."

SAME—INTOXICATION.

In charging the jury upon the subject of voluntary drunkenness as a defense to the commission of crime, it is not error for the court to enlarge upon the subject by further charging "that, in dealing with such a condition you ought to use great caution not to give immunity to persons who commit crime

19—23 WASH.

when they are inflamed by intoxicating drink. You must dis-
criminate between the conditions of mind merely excited by
intoxicating drink, and yet capable of forming a specific intent
to take life, and such a prostration of the faculties as renders
a man incapable of forming the intent, or of deliberation or
premeditation"; since such charge is not open to the objection
that it indicates to the jury the court's opinion as to the
defendant's capability of forming a specific intent to take life,
but merely points out the distinctions made by the law, so far
as responsibility is concerned, between different degrees of
intoxication.                                                  ,

SAME—INSANITY—RELEVANCY OF INSTRUCTIONS TO ISSUES.

Where the defense in a prosecution for murder is that the
defendant at the time of the commission of the act had been
rendered totally incapable of forming an intent to kill, because
of drugs administered to him in intoxicating drinks, and the
jury has been fully charged as to the law upon such subject, a
charge to the jury upon the question of insanity, when there is
no testimony in the case upon that subject, must be presumed
to be prejudicial error, in the absence of an affirmative showing
in the record that no prejudice resulted from the interjection
of such an issue.                                             ,

SAME—CREDIT OF WITNESSES—AFFIRMATIVE AND NEGATIVE TESTI-
MONY.

Where there is testimony both that defendant was under
the influence of liquor and that he was sober, it was not error
for the court to refuse to charge that "ordinarily a witness who
testifies to an affirmative is entitled to credit in preference to
one who testifies to a negative, because the latter may have
forgotten what may have actually occurred, while it is impossi-
ble to remember what never existed," since the condition of
sobriety cannot be said to be a negative condition.

Appeal from Superior Court, Skagit County.—Hon.
JESSE P. HOUSER, Judge. Reversed.

J. B. Wright and R. H. Lindsay, for appellant.

M. P. Hurd, Prosecuting Attorney, and McBride
& Joiner, for the State.

The opinion of the court was delivered by

DUNBAR, C.J.—The appellant was convicted of the
crime of murder and sentenced to death, and judgment

of death was pronounced upon him. This is an appeal from said judgment.

A minute statement of the case is unnecessary, as the killing is conceded, and that it was ruthless and unprovoked. The principal defense was that the appellant was irresponsible, by reason of his having been under the influence of intoxicating drinks and drugs, which had been administered to him. The first assignment of error challenges the correctness of the overruling by the court of appellant's motion for a change of venue. The law on that subject is as follows:

"The defendant may show to the court, by affidavit, that he believes he cannot receive a fair trial in the county where the action is pending, owing to the prejudice of the judge, or to excitement or prejudice against the defendant in the county, or some part thereof, and may thereupon demand to be tried in another county. The application shall not be granted on the ground of excitement or prejudice other than prejudice of the judge, unless the affidavit of the defendant be supported by other evidence; nor in any case unless the judge is satisfied the ground upon which the application is made does exist.

"When the affidavit is founded on prejudice of the judge, the court may, in its discretion, grant a change of venue to some other county, or may continue the cause until such time as it can be tried by another judge in the same county; if the affidavit is founded upon excitement or prejudice in the county against the defendant, the court may, in its discretion, grant a change of venue to the most convenient county.   *   *   *   "   Bal. Code, §§ 6794, 6795.

The construction placed upon this statute by the appellant is to the effect that, because it provides that when the application is based on the ground of excitement or prejudice other than prejudice of the judge, the application shall not be granted unless the affidavit be supported by other evidence, but that when it is upon the ground of the

prejudice of the judge no supporting affidavit is necessary. It follows that it was the intention of the law that no discretion be left with the judge when the application is based upon his prejudice, and that the language of §6795, viz., "when the affidavit is founded on prejudice of the judge, the court may, in its discretion, grant a change of venue to some other county, or may continue the cause until such time as it can be tried by another judge in the same county," confers discretion simply as to the choice of either removing the case to some other county, or holding it for trial by another judge in the same county; and the argument is based upon the presumption that a judge is not capable of passing upon the question of his own prejudice. However this may be, we are called upon to construe the statute as it has been enacted, and, so construed, we are unable to conclude that the discretion is taken from the judge in one case more than in the other. In fact, such a conclusion is necessarily excluded by the very provisions of the statute itself, viz.,—the concluding clause of § 6794—that the application shall not be granted "in any case unless the judge is satisfied the ground upon which the application is made does exist." Neither do we think, from an examination of the record, that the judge abused his discretion in refusing the motion either on the ground of his own prejudice, or that of prejudice of the community.

Error is alleged in the giving of instruction No. 6, which is as follows:

"No particular length of time need elapse before there can be deliberation or premeditation in an act. A single moment may be enough. It is sufficient if you find from the evidence, and beyond a reasonable doubt, that any length of time elapsed, no matter how short, sufficient to allow a design to be formed in the mind and that design

to be deliberated upon and meditated over before carrying into effect."

It is insisted that this instruction is contrary to the ruling of this court in *State v. Rutten*, 13 Wash. 203 (43 Pac. 30) ;*State v. Straub*, 16 Wash. 111 (47 Pac. 227) ; and *State v. Moody*, 18 Wash. 165 (51 Pac. 356). The language criticized by this court in *State v. Rutten*, *supra*, and which was held to obliterate the statutory distinction between murder in the first and second degrees, was as follows:

"There need not be any appreciable space of time between the formation of intention to kill and killing. They may be as instantaneous as successive thoughts."

Practically the same language was used by the court in *State v. Moody*, *supra*. The instruction in the *Rutten Case* was noticed by this court in *State v. Straub*, *supra*, and was distinguished from the instruction alleged as error in the latter case, which was as follows:

"Malice is deliberate and premeditated when it has been dwelt upon at all in the mind and when the motive or consideration moving to his act has been to any extent mentally weighed. Premeditation may be as quick as thought in the mind of man."

This instruction, without going into an analysis of it as we did in that case, was held to be good. The instruction in this case not only does not fall within the criticism passed upon the instruction in the *Rutten Case*, but makes a wider distinction between murder in the first and murder in the second degree than does the instruction in the *Straub Case*, just noticed. The objection to the instruction in the *Rutten Case* was that it informed the jury that no appreciable space of time was necessary, and hence no opportunity for deliberation; but the instruction under consideration is not subject to this construction.

Objection is also made to the 8th instruction of the court, which was as follows:

"I instruct you that voluntary drunkenness is not an excuse for crime, but as you must determine the degree of the crime of which the defendant is guilty, if he is guilty at all, it becomes necessary for you to inquire as to the state of mind under which he acted, and in the prosecution of such inquiry his condition, as drunk or sober, is proper to be considered, inasmuch as the degree of the offense, if any has been committed, depends upon the question whether the killing was wilful, deliberate, and premeditated; and upon that question it is proper for you to consider evidence of intoxication, if such there be, not upon the ground that drunkenness renders a criminal act less criminal, or can be received in extenuation or excuse, but upon the ground that the condition of the defendant's mind at the time that the act was committed must be inquired after, in order to justly determine the question whether his mind was capable of that deliberation, or premeditation, or purpose which, according as they are absent or present, determine the degree of the crime or the guilt or innocence of the defendant. But I charge you, gentlemen, that, in dealing with such a condition, you ought to use great caution not to give immunity to persons who commit crime when they are inflamed by intoxicating drink. You must discriminate between the conditions of mind merely excited by intoxicating drink, and yet capable of forming a specific intent to take life, and such a prostration of the faculties as renders a man incapable of forming the intent, or of deliberation or premeditation. If an intoxicated person has the capacity to form an intent to take life, and conceives and executes such intent, it is no ground for reducing the degree of his crime that he was induced to conceive it, or to conceive it more suddenly, by reason of his intoxication."

It is to the "cautionary" part of this instruction, as it is termed by the appellant, that he objects, and it is insisted that the court indicated to the jury by such

instruction that in its opinion the crime was committed when the appellant was capable of forming a specific intent to take life, and that it had no right to discuss the testimony in that regard. We do not think that appellant's contention is justified by the language of the instruction. The court was not talking about the testimony in the case, was not discussing the probabilities of the truthfulness or untruthfulness of any testimony, but was simply pointing out to the jury the distinctions which the law makes, so far as responsibility is concerned, between the different degrees of intoxication.

A more troublesome question, however, is involved in the next assignment, viz., that the court erred in giving instructions numbered 10 and 11, which were as follows:

"No. 10. The defense of insanity has been interposed. The law presumes every man to be sane, yet, where evidence has been introduced bearing upon the question of sanity or insanity, it is incumbent upon the state to establish the sanity of the defendant beyond a reasonable doubt. The term 'insanity' means such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong, or unconscious at the time of the nature of the act he is committing, or where, though conscious of it and able to distinguish between right and wrong and know that the act is wrong, yet his will, by which I mean the governing power of his mind, has been otherwise than voluntarily so completely destroyed that his actions are not subject to it, but are beyond his control.

"No. 11. The plea of insanity is either a complete defense or no defense at all. It cannot be considered for the purpose of reducing the grade of the crime charged. If defendant was insane at the time of killing Woodbury, he should be acquitted; but if he was not insane then any evidence that may have been introduced bearing upon the question of insanity cannot be considered for the purpose of reducing the grade of the crime charged."

It is not contended by the appellant that these instructions are violative of any principles of abstract law, but the contention is that there was no issue of insanity presented in the trial of the cause, and that the jury was confused by such instructions, and was liable to confuse the instruction in relation to insanity with that in relation to intoxication, and conclude that, if the defendant were found to be intoxicated to such an extent that he was unable to deliberate, such fact would not warrant it in finding for any less offense than the offense of murder in the first degree. It is asserted by the respondent that this apprehension is more fanciful than real, and that the issue of insanity was made in the case. In support of that contention an additional or supplementary statement of facts is brought to this court, wherein it is shown that counsel for the defense in his opening statement admitted the killing of Woodbury by the defendant at the date and place alleged in the information, and claimed that the defendant would be able to satisfy the jury that at the time of such killing he (defendant) was so under the influence of intoxicating drinks and noxious drugs administered to him, by persons unknown to the defendant, for the purpose of robbing him, that he was wholly incapable of premeditation or deliberation in the act of killing, and that, in fact, at the time of said killing, said defendant, by reason of the using of such noxious drugs, was wholly unconscious, and other expressions to the same effect. But instruction No. 9 covers this claim of defendant. It was as follows:

"If, after a careful consideration of all testimony in the case,—that of the state as well as that of the defense, —your minds are left in reasonable doubt as to whether or not at the time of the killing of the deceased by the defendant, if you find that defendant killed him, the defendant was so far under the influence of noxious drugs

administered to him by others than himself, and without his knowledge, that his mental condition was such that he was incapable of distinguishing between right and wrong, and that the acts then committed by him, so far as he was concerned, were involuntary and unconscious acts, you will acquit the defendant."

The court has also instructed in No. 8 that his condition, as drunk or sober, was proper to be considered, inasmuch as the degree of the offense, if any had been committed, depended upon the question whether the killing was wilful, deliberate, and premeditated, and that upon that question it was proper for the jury to consider evidence of intoxication, upon the ground that the condition of the defendant's mind at the time the act was committed must be inquired after, in order to determine the question whether his mind was capable of that deliberation or premeditation of purpose which, according as those qualities of mind were absent or present, determined the degree of the crime or the guilt or innocence of the defendant. So that the law governing every phase of the case, outside of the question of pure insanity, had been given to the jury by the court; and, while it is true that insanity is a comprehensive word and includes within it the definition of many mental disorders, delusions, and manias, we have not been able to find from an investigation of any available work on medical jurisprudence or psychology a warrant for using the word insanity in the sense in which it was used in the charge in this case, with reference to intoxication, either by intoxicating liquors or stimulating drugs. We think the jury, considering all the instructions of the court, could rightly conclude that the judge used the word insanity in this case in a distinguishing sense; that he did so use it is shown by the fact that he explicitly instructed in relation to

intoxication and the effects upon the mind of the use of drugs.

It is claimed by the respondent that there was no prejudice resulting from this error, if it be conceded to be error; but this court has often announced the rule—and the announcement is in consonance with the uniform rulings of courts—that, where an erroneous instruction has been given, or conflicting instructions, prejudice will be presumed, unless the record shows affirmatively that no prejudice resulted. We are unable to gather from the record any affirmative evidence that the jury would not have been warranted in concluding that the condition of mind which was attempted to be shown by the defendant was the condition of mind referred to by the judge in instructions 10 and 11; and it might reasonably conclude from the instruction that, unless insanity of the defendant was established, there could be no other degree of punishment inflicted, but that he must be found guilty of murder in the first degree. It is a dangerous thing for a court to interject into a cause, by an instruction, an issue which was not raised by the pleadings or by the testimony in the case, and we have searched this record in vain for any testimony bearing upon the question of insanity.

We see no objection to instruction No. 12. Nor was there any error of the court in refusing the instructions asked for. All of the instructions which properly stated the law had been given, in substance, in the direct charge. Appellant earnestly urges that the court should have given instruction No. 6, which is as follows:

"It is a rule of evidence that ordinarily a witness who testifies to an affirmation is entitled to credit in preference to one who testifies to a negative, because the latter may have forgotten what may have actually occurred, while it is impossible to remember what never existed."

This instruction was intended to bear on the question of the intoxication of the defendant, some of the witnesses having testified that defendant at the time of the killing was under the influence of liquor, while others testified that at such time he was sober. We do not think there is any merit in the contention that those who testified that defendant was sober were testifying to a negative, while those who testified that he was under the influence of intoxicants were testifying to an affirmative. Neither condition could be said to be either an affirmative or a negative condition.

For the error discussed, however, by the giving of instructions 10 and 11, the judgment must be reversed and a new trial awarded.

REAVIS, FULLERTON, ANDERS and WHITE, JJ., concur.