[No. 48281-1. En Banc. September 30, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN LYNN BROOKS, *Petitioner*.

*Kenneth A. Lee,* for petitioner.

*Russ Juckett, Prosecuting Attorney,* and *Asa Glazer, Deputy,* for respondent.

STAFFORD, J.—The defendant, Steven Brooks, appeals from a judgment and sentence entered on a jury's verdict of guilty of murder in the first degree. RCW 9A.32.030(1)(a). Defendant assigns error to the trial court's refusal to give his proposed instruction on voluntary intoxication and to the trial court's refusal to admit opinion testimony of the defense psychologist concerning premeditation.

## I
### VOLUNTARY INTOXICATION

The trial court instructed the jury that to convict the defendant of murder in the first degree it must find he acted "with intent to cause the death" of the victim and that "the intent to cause the death was premeditated." The State appears to agree intoxication may be shown for its bearing on both intent, *State v. Rio,* 38 Wn.2d 446, 453–54, 230 P.2d 308 (1951), and premeditation. *State v. Hartley,* 25 Wn.2d 211, 223–24, 170 P.2d 333 (1946). The trial court refused, however, to give defendant's proposed instruction

bearing on voluntary intoxication asserting there was no evidence that the consumption of alcohol affected defendant's ability to form an *intent* or impaired his mental state. In so ruling, the trial court stated that premeditation involves the passage of time and is not a mental state. Thus, the court held, voluntary intoxication has no bearing on *premeditation.* At the time of closing argument the trial court did permit defendant to argue that the consumption of alcohol reduced defendant's ability to premeditate.

Both parties agree there was insufficient evidence of involuntary intoxication to negate specific intent. Further, the State concedes defendant's proposed instruction on voluntary intoxication correctly states the general law.[1] The question, then, is whether the instruction was sufficiently supported by evidence of the effect drinking had on defendant's ability to *premeditate* an intent to kill rather than on his ability to form the *specific intent* itself.

Although the defendant's argument relates to proof of intoxication and its effect on *premeditation* alone, the State suggests the rules governing evidence of voluntary intoxication are the same whether *specific intent* or *premeditation* is at issue. Thus, the State argues, it is proper to turn for guidance to those cases involving voluntary intoxication as it relates solely to specific intent. In that regard, then, the State asserts more was needed to support the proposed instruction than evidence of the excessive consumption of alcohol. It contends that additionally defendant must establish the drinking had an effect on defendant's ability to form a *specific intent. State v. King,* 24 Wn. App. 495, 501–02, 601 P.2d 982 (1979). It is the latter requirement the State contends is missing, *i.e.,* an absence of substantial evidence that defendant's drinking

---

[1]"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition, *but whenever the actual existence of any particular mental state is a necessary element to constitute a particular kind or degree of crime, the fact of intoxication may be taken into consideration in determining such mental state.*" (Italics ours.) Defendant's proposed instruction 11.

interfered with his ability to form a specific intent to kill (and thus, inferentially, his ability to premeditate such an intent).

The State's argument oversimplifies the issue. Intent and premeditation are not synonymous. They are separate and distinct elements of the crime of murder in the first degree. RCW 9A.32.030(1)(a), .050(a). Premeditation is the element that distinguishes first from second degree murder as charged herein. *State v. Shirley,* 60 Wn.2d 277, 278, 373 P.2d 777 (1962); *State v. Rutten,* 13 Wash. 203, 212, 43 P. 30 (1895).

Although intent and premeditation each involve processes of the mind, their impact upon the ultimate decision to be made by a jury is dissimilar. "Intent" involves the mental state of "acting with the objective or purpose to accomplish a result which constitutes a crime."[2] On the other hand, the verb "premeditate" encompasses the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short.[3] Thus, the objective or purpose to take human life (sufficient to support a charge of second degree murder) must have been formed after some period of deliberation, reflection or weighing in the mind for the act to constitute first degree murder. One may be capable of forming an intent sufficient to support a charge of second degree murder and still be incapable of deliberation or forming a *premeditated intent* to take the life of another.

The question before us, then, is whether evidence of the consumption of alcohol was sufficient to permit the jury to consider whether the amount consumed had an effect upon defendant's ability to reflect, reason, deliberate or weigh in the mind an objective or purpose to take human life. We hold there was sufficient evidence which, if believed by the jury, would support a determination that defendant was

---

[2]Unchallenged instruction 11.

[3]Unchallenged instruction 6.

unable to premeditate an intent to take another's life.

Without question some of the evidence of intoxication is in dispute. Nevertheless, there is evidence which, if believed by the jury, would establish the following: On June 21, 1979, defendant went camping with a friend near the place where the victim's body was found on June 22. Defendant began drinking beer, whiskey and rum and continued to do so almost constantly from June 21 through the afternoon of the victim's death.

Numerous witnesses described defendant's condition as follows: he was drunk; he was "staggering around . . . drunk, a bottle of whiskey in [his] hands . . . through the biggest part of the day"; he was offered a grey spider which he ate and washed down with whiskey; his face was blotchy and his eyes were "buggy red"; his speech was slurred; he was trembling; he walked lopsided; he was unsteady on his feet; he swayed back and forth; he stumbled; and he staggered and fell in the water. Considerably less evidence than the foregoing was deemed sufficient to support an instruction on voluntary intoxication in *State v. Jones*, 95 Wn.2d 616, 628 P.2d 472 (1981).[4]

In addition, Dr. Lubach, a psychologist who had done extensive interviewing and psychological testing of defendant, offered to testify about defendant's ability to premeditate or deliberate. The offer of proof indicated the psychologist would testify that assuming the personality disorder revealed by his tests, the excessive usage of alcohol, and the decrease in defendant's ability to control

---

[4]In *State v. Jones*, 95 Wn.2d 616, 622, 628 P.2d 472 (1981), we set forth the evidence as follows: "[A]ppellant testified repeatedly that he had been drinking beer and had drunk 'nine or eleven' beers on the afternoon before the incident. Report of Proceedings, at 305. A witness who talked to appellant a few minutes after the incident 'thought possibly he had been drinking'. Report of Proceedings, at 235. A witness who talked to appellant in the decedent's apartment an hour before the incident noticed that '[t]he whites of his eyes were red and his eyes were very glassy. His speech was slurred.' Report of Proceedings, at 122. After his apprehension soon after the commission of the crime, appellant was placed for a time in the 'drunk tank' at the police station. CrR 3.5 hearing; Report of Proceedings, at 35."

aggressive impulses when under the influence of alcohol, "He would be very probable to act in an unpremeditated impulsive fashion under those conditions." Dr. Lubach indicated he would also testify that his testimony related to the likelihood of *premeditation* rather than *intent*.

The trial court's rejection of Dr. Lubach's testimony has been assigned as error which will be discussed in part II of this opinion. It is sufficient to say, at this juncture, that the testimony taken as a whole, particularly when coupled with *the defendant's offer of proof involving the doctor's testimony*, was sufficient to support the requested instruction on voluntary intoxication insofar as it pertained to premeditation. Failure to give the requested instruction constituted reversible error.

## II
### PREMEDITATION

Dr. Lubach did not testify about defendant's *specific intent* at the time the crime was committed. Rather, he sought to testify concerning defendant's ability to *premeditate* the intent to cause the victim's death. The psychologist declared that, based on reasonable medical probability, defendant had a personality disorder affected by the excessive use of alcohol; that he had a tendency to act aggressively and impulsively when under the influence of alcohol; and, "He would be very probable to act in an *unpremeditated impulsive* fashion under those conditions." (Italics ours.) Later, he sought to testify that defendant's ability to control hostility and aggression was made worse by drinking and that drinking "increases his tendency to resort in kind of an *impulsive, non–premeditated* kind of way, to just react kind of *automatically*." (Italics ours.)

The trial court only permitted Dr. Lubach to testify that defendant had a personality disorder, was an alcoholic, and tended to act in an impulsive manner. He was not permitted to give his opinion on whether defendant was capable of premeditating an intent to kill. Apparently it was the view of the trial court and Court of Appeals that premeditation,

unlike intent, is not a mental state and thus the doctor's testimony about the impact of excessive drinking was not relevant. The trial court and Court of Appeals were of the view that it was necessary for the psychologist to connect the claimed mental disorder with defendant's inability to form *specific intent* to commit the crime charged rather than connect it with *premeditation.* In support they relied upon *State v. Martin,* 14 Wn. App. 74, 538 P.2d 873 (1975).

■ We find *State v. Martin* inapposite. It does no more than hold that, when the element of a specific intent is at issue, testimony concerning a mental disorder must be related to the issue of that specific intent to be deemed relevant. *State v. Martin* does not suggest, however, that premeditation is not a mental state or that if premeditated intent is at issue, as in the instant case, a doctor may not testify about premeditation or the impact of excessive drinking thereon. As indicated earlier, both intent and premeditation encompass mental processes to be considered by the jury in resolving separate and distinct issues pertaining to elements of the crime charged. Thus, the proffered medical testimony about psychological testing, mental diagnosis, excessive drinking and an expert medical opinion based thereon was relevant to the issue of defendant's ability to premeditate an intent to take the victim's life. The trial court erred by excluding the doctor's testimony in this regard. *See State v. Carter,* 5 Wn. App. 802, 490 P.2d 1346 (1971).

If a particular state of mind, *i.e.,* premeditation, is required to establish a degree of crime, the fact of intoxication and its impact upon a defendant's mental process may be shown to demonstrate an absence of premeditation. *See State v. Hawkins,* 23 Wash. 289, 294, 63 P. 258 (1900).

In the instant case there was considerable lay and medical testimony which, if believed by the jury, would establish that the excessive drinking superimposed upon defendant's mental disorder would interfere with his ability to premeditate. The trial court erred by rejecting this relevant testimony.

The trial court and Court of Appeals are reversed and the cause is remanded for a new trial.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied December 22, 1982.