[No. 13123-1-I.   Division One.   July 23, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN LYNN BROOKS, *Appellant.*

*Thomas P. Conom,* for appellant (appointed counsel for appeal).

*Seth Dawson, Prosecuting Attorney,* and *S. Aaron Fine, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

In the early afternoon of July 21, 1979, at 2 p.m., the defendant was seen going under a bridge at the Olney Creek campground near Sultan with a 10–year–old boy. Some 20 minutes later the defendant was seen to emerge by himself. A relatively short time afterward, the child's nude body was found under the bridge draped over a large rock. The boy had head wounds, numerous scratches, abrasions

and bruises as well as a severe laceration of the genitalia which appeared to have been made by a dull cutting instrument. Death was determined to have been caused by drowning, although the body was lying well above the water at the time it was discovered.

At a jury trial, the defendant was convicted of murder in the first degree. He appealed to this court and we affirmed the conviction. *State v. Brooks,* 29 Wn. App. 1046 (1981). The State Supreme Court than granted discretionary review, reversed the conviction and remanded the case for a new trial. *State v. Brooks,* 97 Wn.2d 873, 651 P.2d 217 (1982).

On remand to the Superior Court, the defendant was again tried before a jury and was again convicted of murder in the first degree. His second appeal to this court raises two issues.[1]

## ISSUES

ISSUE ONE. Did the police intentionally create a situation likely to induce the defendant to make incriminating statements to his cellmate in the absence of counsel, and thereby violate the defendant's Sixth Amendment right to counsel?

ISSUE Two. Did the trial court err when it permitted two photographs of the child's body to be admitted into evidence at the trial?

---

[1]The following should be noted in connection with the issues presented by the present appeal.

First, the defendant's voluntary intoxication defense, which was considered at length by this court on the initial appeal, and on which the defendant ultimately prevailed in the Supreme Court, was abandoned at the defendant's second trial. He did not offer expert testimony regarding his capacity to commit murder in the first degree nor did he propose a jury instruction on that issue.

Second, the defendant's assertion that the testimony of his cellmate impinged upon his constitutional right to counsel, discussed herein as Issue One, was considered by this court in the initial appeal to be nonmeritorious. Because, however, another suppression hearing was held prior to the second trial, at which the defendant's motion to suppress was again considered and denied, we once again consider the defendant's assertions of error in that regard.

DECISION

ISSUE ONE.

CONCLUSION. Under the facts of this case, the police did not deliberately elicit incriminating statements from the defendant by using his cellmate as their agent. The defendant was not denied his Sixth Amendment right to counsel and the trial court did not err when it permitted the cellmate to testify to incriminating statements made to him by the defendant during the time the two of them occupied the same cell.

Prior to the trial of this case, the defendant moved to suppress the testimony of his former cellmate concerning incriminating statements made to him by the defendant after the defendant's arrest and incarceration.

Following a lengthy hearing at which numerous witnesses (including the defendant and his cellmate) testified, the trial court denied the defense motion to suppress. Findings of fact were thereupon entered as were conclusions of law based thereon. These set forth the bases of the trial court's ruling on this issue:

FINDINGS OF FACT

On July 23, 1979, the defendant . . . was placed in the Snohomish County Jail cell No. 3 with [his cellmate].

Finding of fact 1.

The two men were placed in the same jail cell in accordance with the written guidelines and procedures as adopted by the Snohomish County Jail.

Finding of fact 2.

No request was made by any law enforcement personnel involved in the investigation of the [defendant's] case to have the two men housed together in the Snohomish County Jail. From July 23, until August 10, 1979, [the cellmate] asked the defendant questions regarding his involvement in the death of [the child], and the defendant responded to his questions.

Finding of fact 3.

From July 23, 1979, until August 10, 1979, [the cellmate] had not discussed his intent to ask these questions with law enforcement officials nor had he discussed

the conversations he had with the defendant to any law enforcement officials.

Finding of fact 4.

Prior to this meeting on August 10, 1979, neither [of the investigating detectives] knew or had any previous contact with [the cellmate].

Finding of fact 5.

Subsequent to August 10, 1979, [the detectives] learned from another cellmate of [the defendant], or from an employee of the Snohomish County Jail, that [the defendant] had made statements to [his cellmate] regarding the death of [the child].

Finding of fact 6.

On August 10, 1979, [detectives] of the Snohomish County Sheriff's Office, inquired [of the cellmate] as to whether he had had conversations with the defendant. [The cellmate] indicated at that time that he had conversations with the defendant but wished to consult with his attorney before any further discussions with the detectives.

Finding of fact 7.

During the meeting between the detectives and [the cellmate] on August 10, 1979, neither detective promised any rewards or "deals" to [the cellmate] in exchange for a statement. [The detectives] instructed [the cellmate] at that time to return to his cell and proceed in a normal fashion with the defendant. The detectives did not request [the cellmate] to elicit any information from the defendant.

Finding of fact 8.

During the period from August 10, to August 14, 1979, the defendant and [the cellmate] had additional conversations regarding the death of [the child]. On August 14, 1979, [the cellmate] provided a written statement to [the detectives] detailing the substance of the conversations he had with the defendant, . . . [The attorney for the cellmate] was present when this statement was provided.

Finding of fact 9.

CONCLUSIONS OF LAW

Prior to August 10, 1979, [the cellmate] had had no

contact with law enforcement officials pertaining to this case; therefore, he could not be considered an agent of law enforcement. Being a private citizen [the cellmate] would not be required to advise the defendant, . . . of his constitutional rights prior to asking [the defendant] questions regarding his involvement in the death of [the child].

Conclusion of law 1.

After August 10, 1979, the nature and extent of [the cellmate's] contact with law enforcement officials was insufficient to create an agency relationship necessary to raise [the cellmate] to the status of an agent of law enforcement officials. Statements made to [the cellmate] both prior to August 10, and after August 10, 1979 are admissible.

Conclusion of law 2.

The foregoing findings of fact are supported by substantial evidence in the record.

*United States v. Henry,* 447 U.S. 264, 65 L. Ed. 2d 115, 100 S. Ct. 2183 (1980), relied on by the defendant, is a case which involved incriminating statements made by a defendant to his cellmate. The cellmate had previously been engaged by the FBI to provide such information to that agency after the defendant had been indicted and was in custody.

■ The United States Supreme Court reversed the defendant's conviction, holding that "[b]y intentionally creating a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel, the Government violated [the defendant's] Sixth Amendment right to counsel." *Henry,* at 274. As the concurring opinion points out, "[t]o demonstrate an infringement of the Sixth Amendment, a defendant must show that the government engaged in conduct that, considering all of the circumstances, is the functional equivalent of interrogation." *Henry,* at 277 (Powell, J., concurring). *See Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964); *Thomas v. Cox,* 708 F.2d 132 (4th Cir.), *cert. denied,* ___ U.S. ___, 78 L. Ed. 2d 262, 104 S. Ct. 284 (1983);

*State v. Cadena,* 74 Wn.2d 185, 190–93, 443 P.2d 826 (1968), *overruled on other grounds in State v. Gosby,* 85 Wn.2d 758, 767, 539 P.2d 680 (1975). All persons to whom someone charged with a crime makes an admission are not ipso facto police agents, nor is the presence of counsel constitutionally required whenever accused persons see fit to talk indiscreetly to third parties. *Paroutian v. United States,* 370 F.2d 631, 632 (2d Cir. 1967); *Cadena,* at 193.

Based on the trial court's findings and on our independent review of the record, *see State v. Daugherty,* 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958, 67 L. Ed. 2d 382, 101 S. Ct. 1417 (1981), the police in this case did not intentionally create a situation likely to induce the defendant to make incriminating statements, nor was there any deliberate and surreptitious interrogation of the defendant. Accordingly, the defendant was not denied his right to counsel as guaranteed by the sixth amendment to the United States Constitution.

ISSUE TWO.

CONCLUSION. No showing has been made that the trial court abused its discretion in admitting the two photographs of the victim's body into evidence, nor does anything in the appellate record support the defendant's assertion that the State was otherwise prohibited from introducing the photographs.

■ "A bloody, brutal crime cannot be explained to a jury in a lily–white manner . . ." *State v. Adams,* 76 Wn.2d 650, 656, 458 P.2d 558 (1969), *rev'd on other grounds,* 403 U.S. 947, 29 L. Ed. 2d 855, 91 S. Ct. 2273 (1971). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable . . ." ER 401.

The photographs of the child's body were evidence that repeated blows and wounds had been inflicted upon the child over an appreciable period of time before the drowning which ultimately caused his death. As such, they were relevant to the issues of intent to kill and premeditation, both of which are elements of the crime of murder in the

first degree, with which the defendant was charged and convicted. RCW 9A.32.030(1)(a). *See State v. Smith,* 58 Or. App. 458, 648 P.2d 1294 (1982), *modified on other grounds,* 65 Or. App. 344, 671 P.2d 1206 (1983); *State v. Hicks,* 133 Ariz. 64, 649 P.2d 267 (1982). Prior to admitting the photographs, the trial court carefully, and at some length, weighed their relevancy against their probable impact on the jury before deciding that the probative value was not substantially outweighed by the danger of unfair prejudice. *See* ER 403. There was no abuse of discretion. *See Adams; State v. Demos,* 94 Wn.2d 733, 736–37, 619 P.2d 968 (1980); *State v. Jones,* 95 Wn.2d 616, 628, 628 P.2d 472 (1981).

At the defendant's first trial, he was tried not only for the crime of first degree murder, of which he was convicted, but also for the crime of indecent liberties, of which he was acquitted. The defendant now argues that since the two photographs in question showed lacerations to the victim's genital organs, and since he had been acquitted of indecent liberties, he was in effect retried on the charge for which he had earlier been acquitted, and that this violated principles of res judicata.

Res judicata and double jeopardy are not here involved, since the defendant was not retried on the indecent liberties charge. *See State v. Morlock,* 87 Wn.2d 767, 768–70, 557 P.2d 1315 (1976); *State v. Dupard,* 93 Wn.2d 268, 272, 609 P.2d 961 (1980). Furthermore, even if we consider the defendant's claim as one of collateral estoppel, *see Morlock,* at 769–70, nothing in the appellate record presented suggests that the State relitigated any issues of ultimate fact necessarily determined in the defendant's favor in the earlier trial, as is necessary in order to establish collateral estoppel. *United States v. Hewitt,* 663 F.2d 1381, 1387 (11th Cir. 1981); *United States ex rel. Fulton v. Franzen,* 659 F.2d 741, 744 (7th Cir. 1981), *cert. denied,* 455 U.S. 1023, 72 L. Ed. 2d 142, 102 S. Ct. 1722 (1982). Presumably the jury at the first trial acquitted the defendant of indecent liberties because the sexual gratification element of the offense was not established as required.

RCW 9A.44.100(2).[2] That element and other elements of the crime of indecent liberties are entirely different from the elements of the crime of murder in the first degree of which the defendant was convicted. *See* RCW 9A.32-.030(1)(a). Nothing in the record of the second trial, which is the one before us, suggests that the case was tried as a sex crime case. There was no constitutional prohibition to admitting the photographs of the victim into evidence.

Affirmed.

DURHAM, C.J., and SCHOLFIELD, J., concur.

Review denied by Supreme Court December 7, 1984.

---

[2]What is now RCW 9A.44.100(2) was formerly codified as RCW 9A.88.100(2).