[No. 17793–1–I.   Division One.   June 3, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. LAMARK
FRANKLIN, *Appellant.*

*Lamark Franklin,* pro se, and *Rita J. Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William Downing, Deputy,* for respondent.

SCHOLFIELD, C.J.—Lamark Franklin appeals his conviction for first degree felony murder, arguing the trial court erred by admitting incriminating statements that were deliberately elicited from him in violation of his Sixth Amendment right to counsel. We affirm.

FACTS

On July 27, 1985, 53–year–old Connie Sangret of Victoria, British Columbia, was shot and killed in her West Seattle motel room by one of two armed robbers. A subsequent investigation led Seattle police to believe that it was Lamark Franklin who had shot Sangret.

Several days later, the police were told by an informant

that Franklin was indeed the "shooter" and was on a commercial flight to Denver disguised as a woman. The police hastily obtained an arrest warrant, then contacted the Denver police, who apprehended Franklin as he disembarked in Denver that evening. A Denver police detective gave Franklin his *Miranda*[1] warnings, and Franklin indicated he understood his rights and signed a waiver of rights form. He then gave police an exculpatory statement. At no time did Franklin request the presence of counsel.

On August 5, a formal information, charging Franklin with felony murder, was filed in King County Superior Court. On August 7, Detectives Boatman and Davis arrived at the Denver County Jail to take Franklin into custody and return him to Seattle. Soon after they arrived, Franklin was released from a holding cell and approached Detective Boatman, who was standing near the booking counter. Franklin indicated he was glad to see the detectives since he had been waiting in the holding cell all morning. Boatman asked Franklin "if he understood what he had been charged with in Washington." Boatman testified that Franklin told him that "he was surprised to see that he was wanted for murder, and . . . that this was not right, because he was guilty of robbery, but not murder", since "he had not killed anyone." Neither Boatman nor Davis had readvised Franklin of his *Miranda* rights prior to the time these statements were made.

Following a CrR 3.5 hearing, the court ruled Franklin's statements admissible since they were made voluntarily after he had been properly advised of his *Miranda* rights by the Denver police. Franklin was convicted as charged, and this appeal was timely filed.

### The Sixth Amendment Right to Counsel

Franklin contends that Boatman deliberately elicited an incriminating statement from him in violation of his Sixth Amendment right to counsel, which he had not waived even

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

though he spoke voluntarily and had previously received his *Miranda* warnings.[2]

The Sixth Amendment right to counsel attaches when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing. *Massiah v. United States*, 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964); *United States v. Gouveia*, 467 U.S. 180, 81 L. Ed. 2d 146, 104 S. Ct. 2292, 2296 (1984).

The State urges this court not to find that Franklin's Sixth Amendment rights attached at the point when the district court complaint was filed merely to obtain an arrest warrant. *See United States v. Duvall*, 537 F.2d 15, 22 (2d Cir.), *cert. denied*, 426 U.S. 950 (1976). However, this argument is irrelevant since the statements at issue here were made 2 days after Franklin was formally charged by information, thus fixing the point at which criminal action commenced against him in Washington state. Therefore, the statements were made after Franklin's right to counsel had attached under the Sixth Amendment.

▇ Once adversarial judicial proceedings have begun against a defendant, the right to counsel extends to every critical stage of prosecution. *Mempa v. Rhay*, 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967). Unlike the Fifth Amendment, the Sixth Amendment right does not depend upon an explicit request for counsel by the defendant, *Brewer v. Williams*, 430 U.S. 387, 404, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977), nor is custodial interrogation necessary

---

[2]Franklin makes the following additional assignments of error in his pro se brief: (1) insufficient evidence to sustain his conviction; (2) denial of defense motion for a voice lineup; (3) admission of evidence of flight to avoid arrest and admission of a .22 caliber bullet into evidence; (4) the court's ruling under ER 609 that three prior robbery convictions were admissible to impeach Franklin; (5) the court's ruling regarding the number of peremptory challenges available to Franklin; (6) alleged bribery and coercion of State's witnesses by investigating police officers; (7) the denial of Franklin's motion to sever; (8) ineffective assistance of counsel; and (9) prosecutorial misconduct. We have reviewed each of these assignments of error and find them to be without merit. Accordingly, they will not be discussed in our opinion in this case.

to trigger the Sixth Amendment rights recognized in *Massiah. Cahill v. Rushen,* 501 F. Supp. 1219, 1228–30 (E.D. Cal. 1980). The sole issue is whether, under the circumstances, a government agent "deliberately elicited" incriminating statements from the accused. *United States v. Henry,* 447 U.S. 264, 270, 65 L. Ed. 2d 115, 100 S. Ct. 2183 (1980). If so, the voluntary nature of the defendant's statements is not relevant for Sixth Amendment purposes. *Cahill v. Rushen, supra* at 1229. We will assume, without deciding, that Franklin did not waive his right to the assistance of counsel.

In *Brewer v. Williams, supra,* a police detective, knowing that the defendant was an escaped mental patient and deeply religious, convinced him that the murder victim deserved a "Christian burial," which induced the defendant to lead police to the victim's body. The detective conceded that he had deliberately set out to obtain as much incriminating information as possible from the defendant during the defendant's isolation from his lawyer while being transported across state. The Court found that the defendant's Sixth Amendment right to counsel had been violated, noting that the detective had deliberately and designedly elicited information from him just as surely, and perhaps more effectively, than if he had formally interrogated the defendant.

In *United States v. Henry, supra,* while the defendant was in jail and prior to counsel having been appointed he made incriminating statements to a fellow inmate, who was a government informant. Even though the informant was instructed not to initiate conversation with Henry about the robbery, the court held that "[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel." (Footnote omitted.) *Henry,* at 274.

The instant case is easily distinguishable from *Brewer*

because Detective Boatman's question was not deliberately designed to evoke an incriminating response from Franklin. Moreover, unlike the defendant in *Brewer*, there is no indication here that Franklin was particularly susceptible to any subtle form of interrogation, nor did Boatman admit he was trying to obtain incriminating information, as did the detective in *Brewer*.

Likewise, this case is distinguishable from *Henry*, where the government intentionally created a situation which the Court concluded was likely to induce the defendant to make incriminating statements. The situation at the Denver jail was not of Detective Boatman's creation, nor is it apparent that such a situation was "likely to induce [Franklin] to make incriminating statements without the assistance of counsel". *United States v. Henry, supra* at 274; *State v. Brooks,* 38 Wn. App. 256, 684 P.2d 1371 (1984).[3]

Franklin argues that Boatman, a 19–year police veteran, knew that his opening gambit was likely to elicit a response about the facts of the case and was a tactic calculated to do so. Such reasoning is pure speculation without support in the record. Boatman's question was simply preliminary to advising Franklin of the charges against him if he did not already know what they were. The question was neutral and nonsuggestive, and normally would be answered with a "yes" or "no."

In conclusion, since Detective Boatman was not deliberately attempting to elicit an incriminating response from Franklin, Franklin's Sixth Amendment right to assistance of counsel was not violated.

---

[3]*But see Hancock v. White,* 378 F.2d 479 (1st Cir. 1967), holding that the *Massiah* rule excludes post–indictment incriminating statements of an accused to government agents in the absence of counsel even when not deliberately elicited or induced by misapprehension engendered by trickery or deception. 378 F.2d at 482. We found no Ninth Circuit case that followed *Hancock,* and likewise decline to do so.

66

The trial court is affirmed.

RINGOLD and WEBSTER, JJ., concur.