Steven L. **BROOKS**,
Petitioner–Appellant,

v.

Larry **KINCHELOE**, et al.,
Respondents–Appellees.

No. 87–4018.

United States Court of Appeals,
Ninth Circuit.

Submitted May 5, 1988 *.
Decided May 25, 1988.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

Steven L. Brooks, in pro per.

Charles S. Faddis, Asst. Atty. Gen., Dept. of Corrections, Olympia, Wash., for respondents-appellees.

Before WRIGHT and CANBY, Circuit Judges, and ORRICK,** District Judge.

** Honorable William H. Orrick, Jr., Senior United States District Judge, Northern District of California, sitting by designation.

ORRICK, Senior District Judge:

Steven L. Brooks, in custody in the State of Washington following his conviction of first degree murder, appeals *pro se* from an order of the United States District Court for the Western District of Washington denying his petition for a writ of *habeas corpus.* 28 U.S.C. § 2254. In his petition he claims that his rights under the Sixth Amendment were violated because the trial court admitted testimony from a jailhouse informant regarding Brooks' murder confession. For the following reasons, we affirm the district court's denial of the petition for writ of *habeas corpus.*

I

On July 11, 1979, the body of ten-year-old Brian Miller was discovered on a rock beneath a bridge at the Olney Creek Campground near Sultan, Washington. An autopsy revealed that the boy had been beaten on the head until unconscious, and then drowned. Numerous bruises and cuts were found on the boy's body, including a laceration extending three-quarters of the way around the base of the boy's penis. In the opinion of the pathologist who testified at trial, this wound was deliberately inflicted with a dull cutting instrument.

Brooks had been camping next to the campsite of Brian Miller and his family. During the morning of July 11, 1979, Brooks made several derogatory remarks about Brian and his family. Brooks also threatened to inflict physical harm on members of Brian's family. Just before the victim's body was discovered, witnesses saw Brooks and the boy descend the creek bank together, next to a bridge. After a short time, Brooks came out from under the bridge by himself. The boy's body was found soon thereafter.

Brooks was arrested for the murder of Brian Miller the next day. He was detained in the Snohomish County Jail pending trial.

Another inmate, Billy Kee, was detained in the same jail cell as Brooks. Kee had previously testified for the state concerning a murder he had witnessed. Kee had also given information to the police on two previous occasions.

While in the cell with Kee, Brooks began to talk about the murder. Brooks in fact admitted to Kee that he had murdered the boy. Kee asked Brooks questions about the murder because, as Kee later stated to the police, "The reason I was interested was I wanted to know why someone would kill a little boy." CR 10, Tr. Exh. 27 at 2.

On August 10, 1979, Detectives Bart and Whitman of the Snohomish County Sheriff's Office met with Kee. They had learned from an undisclosed third party that Brooks had been talking to Kee about the death of Brian Miller. The detectives asked Kee to tell them what Brooks had been saying. They promised nothing in return for this information. Kee refused to say anything until he had talked to his attorney. The detectives then asked him to remember anything further that Brooks might tell him.

It is not completely clear that the detectives only asked Kee to passively listen to Brooks and to remember what he heard. At one point Kee testified that the detectives "just asked me to ask him a few things, you know, just remember what he says." CR 9, RP 31. At another point Kee testified that the detectives "didn't ask me to ask him nothing." They said, " 'Go back to the cell,' says, 'Act like nothing has happened,' goes, 'If he says anything, just remember it.' " CR 9, RP 30.

Kee was returned to his cell, and over the next few days continued to talk with Brooks about the murder. On August 14, 1979, after discussing the matter with his attorney, Kee again met with the detectives. This time he made a detailed written statement about Brooks' confessions.

Kee was removed from the cell at the Snohomish County Jail and transferred to the Lynwood County Jail. He was also given $100 credit for commissary purchases at the jail.

Brooks was tried in November 1979 for first degree murder and indecent liberties. Prior to trial, he moved to suppress his statements to Kee. The motion was denied. The jury returned a verdict finding Brooks guilty of first degree murder but not guilty of indecent liberties. Subsequently, the conviction was overturned by the Washington Supreme Court on the basis that the trial court refused to give an instruction concerning voluntary intoxication. *State v. Brooks*, 97 Wash.2d 873, 651 P.2d 217 (1982).

On remand, Brooks renewed his motion to suppress his statements to Kee. The trial court held a hearing on the motion to suppress Kee's testimony. It denied Brooks' motion and in doing so entered the following written findings of fact: [1]

### "FINDINGS OF FACT

On July 23, 1979, the defendant ... was placed in the Snohomish County Jail cell No. 3 with [his cellmate].
Finding of fact 1.

The two men were placed in the same jail cell in accordance with the written guidelines and procedures as adopted by the Snohomish County Jail.
Finding of fact 2.

No request was made by any law enforcement personnel involved in the investigation of the [defendant's] case to have the two men housed together in the Snohomish County Jail. From July 23, until August 10, 1979, [the cellmate] asked the defendant questions regarding his involvement in the death of [the child], and the defendant responded to his questions.
Finding of fact 3.

From July 23, 1979, until August 10, 1979, [the cellmate] had not discussed his intent to ask these questions with law enforcement officials nor had he discussed the conversations he had with the defendant to any law enforcement officials.

1. The bracketed words were added by the Washington Court of Appeals in its decision in *State v. Brooks*, 38 Wash.App. 256, 684 P.2d 1371 (1984).

Finding of fact 4.

Prior to this meeting on August 10, 1979, neither [of the investigating detectives] knew or had any previous contact with [the cellmate].

Finding of fact 5.

Subsequent to August 10, 1979, [the detectives] learned from another cellmate of [the defendant], or from an employee of the Snohomish County Jail, that [the defendant] had made statements to [his cellmate] regarding the death of [the child].

Finding of fact 6.

On August 10, 1979 [detectives] of the Snohomish County Sheriff's Office, inquired [of the cellmate] as to whether he had had conversations with the defendant. [The cellmate] indicated at that time that he had conversations with the defendant but wished to consult with his attorney before any further discussions with the detectives.

Finding of fact 7.

During the meeting between the detectives and [the cellmate] on August 10, 1979, neither detective promised any rewards or "deals" to [the cellmate] in exchange for a statement. [The detectives] instructed [the cellmate] at that time to return to his cell and proceed in a normal fashion with the defendant. The detectives did not request [the cellmate] to elicit any information from the defendant.

Finding of fact 8.

During the period from August 10, to August 14, 1979, the defendant and [the cellmate] had additional conversations regarding the death of [the child]. On August 14, 1979, [the cellmate] provided a written statement to [the detectives] detailing the substance of the conversations he had with the defendant, ... [The attorney for the cellmate was present when this statement was provided]."

CR 19 at 6–8.

After Brooks' motion to suppress was denied, the case proceeded to trial, and

Brooks was once again convicted of first degree murder. This conviction was affirmed by the Washington Court of Appeals. *State v. Brooks,* 38 Wash.App. 256, 684 P.2d 1371 (1984). In affirming the conviction, the Washington Court of Appeals adopted the trial court's findings and added the additional finding:

"Based on the trial court's findings and our independent review of the record, ... the police in this case did not intentionally create a situation likely to induce the defendant to make incriminating statements, nor was there any deliberate and surreptitious interrogation of the defendant."

*Id.* at 262, 684 P.2d 1371. The Washington Supreme Court denied discretionary review. Cause No. 50972–7 (Dec. 7, 1984).

On January 16, 1985, Brooks filed a petition for writ of *habeas corpus.* On June 9, 1987, the district court denied the petition.

## II

This court reviews *de novo* the district court's decision to deny a petition for writ of *habeas corpus. Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985); *Chatman v. Marquez,* 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied,* 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985).

■ In general, when a state court makes a factual determination after a hearing on the merits and in the form of a written finding or opinion, the factual determination is presumed to be correct. 28 U.S.C. § 2254(d); *Patton v. Yount,* 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2891–92 n. 12, 81 L.Ed.2d 847 (1984); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed. 2d 722 (1981). This presumption of correctness applies to the written determinations of both the trial court and the appellate courts. *Id.* at 546–47, 101 S.Ct. at 768–69. However, the presumption of correctness does not exist in certain exceptional situations, none of which were present here.[2] When the presumption of correctness does apply, the burden is on the petitioner to establish *by convincing evidence* that the

---

2. The presumption of correctness will not apply if the petitioner can prove:

(1) that the merits of the factual dispute were not resolved in the State court hearing;

factual determination of the state court was erroneous. *Id.* at 550, 101 S.Ct. at 770–71.

■ In this case, the factual determination made by the state trial court must be presumed to be correct. The trial court held a pretrial hearing on Brooks' motion to suppress Kee's testimony, and then entered detailed and comprehensive written findings of fact, *supra.* These findings were reviewed and adopted by the Washington Court of Appeals. They should be presumed to be correct by this court.

Although Brooks now argues that exceptions (1), (2), and (3) to the usual presumption of correctness exist in this case, these arguments are wholly without merit. First, it is clear that the state trial court did resolve the merits of the factual dispute over Kee's status as a government informant. Second, Brooks cannot prove that the fact-finding procedure employed by the state court was somehow inadequate. To the contrary, the state court made its factual determination after a lengthy pretrial hearing on Brooks' motion to suppress Kee's statements. Finally, all material facts concerning Kee's connection to the government were carefully developed by the state court, and formed the basis for the state court's comprehensive findings.

■ Moreover, a review of the record demonstrates that the findings of fact made by the trial court are supported by the record taken as a whole. Each finding of fact except "Finding of fact 7" is based on uncontroverted evidence in the trial record. While "Finding of fact 7" is not based on uncontroverted evidence, it is fairly supported by the trial record as a whole. Although Kee did indicate at one point that the detectives suggested he ask Brooks questions, the majority of his testimony supports the trial court's finding that the

detectives did not request him to elicit any information from Brooks.

In sum, Brooks cannot prove that any of the exceptions to the general presumption of correctness apply. Nor can Brooks offer any convincing evidence to show that the state court findings were erroneous. The mere conclusory statements offered by Brooks do not satisfy the very high standard that Brooks must meet in challenging the state court findings.

### III

Brooks argues that his Sixth Amendment right to counsel was violated when Kee testified about the incriminating statements he heard Brooks make in the jail cell. Given the state court findings that Kee was not a government agent and that the police did not induce the defendant to make incriminating statements, this argument must fail.

■ Brooks is correct, of course, when he argues that the Sixth Amendment right to counsel is violated when a government agent deliberately elicits incriminating statements from an indicted defendant in the absence of counsel. *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). It is also true that in *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court applied the *Massiah* holding to suppress statements made to a paid jailhouse informant. The Court found that "[b]y intentionally creating a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel, the Government violated [the defendant's] Sixth Amendment right to counsel." 447 U.S. at 274, 100 S.Ct. at 2189. *See also United States v. Harris,* 738 F.2d 1068, 1071 (9th Cir.1984) ("the

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) ... the Federal court ... concludes that such factual determination is not fairly supported by the record

. . . .

28 U.S.C. § 2254(d).

determinative issue is not the informant's subjective intentions, but rather whether the federal law enforcement officials created a situation which would likely cause the defendant to make incriminating statements").

However, the facts in *Henry* are clearly distinguishable from the facts as established by the state courts in this case. In *Henry*, the informant was acting under instructions from the government to elicit statements from the defendant. The informant was also being paid on a contingent-fee basis for any useful information he produced. 447 U.S. at 270, 100 S.Ct. at 2186–87. In this case, the state courts have determined that Kee was not instructed to ask Brooks any questions, and was not promised any "deals" or rewards for any information he might provide. The state appellate court further determined that the police did not use Kee to carry out any deliberate and surreptitious interrogation of defendant.

This case more closely resembles *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). In *Kuhlmann*, the Supreme Court held that a defendant does not establish a Sixth Amendment violation simply by showing that a jail cell informant, either voluntarily or through a prior arrangement, reports incriminating statements to the police. *Id.* at 459, 106 S.Ct. at 2630. Rather, the defendant must show that the police and their informant took some action "designed deliberately to elicit incriminating remarks." *Id.* The Supreme Court also held the Court of Appeals had erred in concluding the defendant's right to counsel had been violated, because this conclusion failed to accord to the state court's factual findings the necessary presumption of correctness. *Id.*

In this case, the state appellate court found that "the police in this case did not intentionally create a situation likely to induce the defendant to make incriminating statements." *Brooks*, 38 Wash.App. at 262, 684 P.2d 1371. The findings made by the state trial court establish that Kee was not a government agent at the time that Brooks made the incriminating statements concerning the murder of Brian Miller.

While these findings indicate that Kee did take action beyond mere listening, they also clearly demonstrate that he did this before the detectives talked to him. The findings also establish that the detectives did not request Kee to elicit any information from defendant. In addition, the state court findings make it clear that Kee was not promised any payment at the time the detectives spoke to him.

Given the facts of this case, Brooks cannot establish any Sixth Amendment violation. "[T]he Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985). Therefore, the district court's denial of Brooks' petition for writ of *habeas corpus* is AFFIRMED.