952 F.2d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Warren W. WELLS, Petitioner-Appellant,
v.
Danny VASQUEZ, Warden, Respondent-Appellee.
 No. 90-16491.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1991.
Decided Jan. 15, 1992.
 
 Before BOOCHEVER, WILLIAM A. NORRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Warren Wells, a California state prisoner, appeals the dismissal of his habeas corpus petition challenging his convictions for first degree murder, attempted robbery and possession of a firearm. We review de novo, Terronova v. Kincheloe, 912 F.2d 1176, 1177 (9th Cir.1990), cert. denied, 111 S.Ct. 1631 (1991), and we affirm.
 
 BACKGROUND
 
 3
 On September 3, 1983, the San Francisco City and County District Attorney filed an information charging Wells with the June 7, 1983 murder of John McBride, residential burglary, and attempted robbery. From the end of September to December 1983, Wells was housed in the county jail next to Michael Steriotti, who had been arrested and charged with murder on August 23, 1983. Steriotti had given information to law enforcement officials and testified for the prosecution on at least two other cases prior to this time. Within a few days, Wells began to confide in Steriotti and related that he had killed McBride.
 
 
 4
 In late October 1983, Steriotti first contacted homicide inspector Erdelatz about the Wells case and on November 1, 1983, Steriotti informed Erdelatz that he had information regarding Wells. The inspector did not discourage Steriotti from gathering information and told him that he needed to discuss with the prosecutor the possibility of Steriotti assisting with the Wells case. The inspector did not, however, ask Steriotti to obtain any information nor did he promise any benefit for providing information. Steriotti returned to his cell where he continued to obtain information from Wells.
 
 
 5
 The district attorney prosecuting Wells was not interested in testimony from a jailhouse informant. Wells' case, however, was reassigned to Assistant District Attorney Carbone, who contacted Steriotti's attorney, Betsy Wolkin, and discussed the possibility of Steriotti providing information. Eventually, plea negotiations between Wolkin and Carbone led to an agreement for a five year term in exchange for Steriotti's guilty plea to voluntary manslaughter. Steriotti's information about Wells allegedly did not affect the plea negotiations. Steriotti's attorney tried to improve his disposition after November 7 by attempting to tie the plea agreement to Steriotti's testimony against Wells, but the prosecutor refused to bargain on this issue. When Steriotti pled guilty on December 1, he had not yet revealed the details of his information about Wells, nor had the police nor prosecutors asked him to obtain any information.
 
 
 6
 Meanwhile, on November 21, 1983, Wells' jury trial began. During the trial, the judge conducted an evidentiary hearing and found that Steriotti was not a government agent at the time he collected the incriminating statements. Defense counsel conceded that Steriotti was not an agent prior to November 1, 1983. The trial court ruled that Wells' statements to Steriotti were admissible.
 
 
 7
 On December 13 and 14, 1983, Steriotti testified at Wells' trial that Wells confessed to him that he killed McBride. Steriotti also admitted that he had testified as an informant in other trials in exchange for protective custody and dismissal of charges, and that he was interested in obtaining a favorable disposition in his case; however, he denied that any promises were made to him. In addition, Steriotti's testimony was corroborated by the testimony of Karol Kress, who was present at the scene of the murder. Wells was found guilty of first-degree murder, attempted robbery, and possession of a firearm by an ex-felon. He was sentenced to fourteen years in state prison and to a consecutive term of twenty-five years to life imprisonment.
 
 
 8
 On direct appeal, the California appellate court affirmed the conviction and the California Supreme Court denied Wells' petition for review. Wells filed a petition for writ of habeas corpus in the United States District Court on July 27, 1987. On September 18, 1990, the district court denied the petition and dismissed the action. Wells now appeals.
 
 DISCUSSION
 I.
 
 9
 Wells argues that his Sixth Amendment right to counsel under Massiah v. United States, 377 U.S. 201 (1964) was violated when the trial court found that Steriotti was not a government agent and, thus, admitted his testimony at Wells' trial. As a threshold matter, Wells claims that the presumption of correctness which generally attaches to a factual determination made by a state court after a hearing on the merits, see 28 U.S.C. § 2254(d) (1988); Brooks v. Kincheloe, 848 F.2d 940, 943 (9th Cir.1988), does not apply because "the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing." 28 U.S.C. § 2254(d)(2); see also Brooks, 848 F.2d at 943-44 & n. 2. Wells claims that the invocation of the attorney-client privilege regarding discussions between 1) Steriotti and his attorney, Wolkin, and 2) Wolkin and Carbone regarding the possible effect of Steriotti's testimony on the disposition of Steriotti's own case deprived him of a full and fair hearing regarding Steriotti's status as a government agent.
 
 
 10
 We find it unnecessary to resolve whether Wells received a full and fair evidentiary hearing. Even if we assume, without deciding, that he did not get a fair hearing and that we are required to review the trial court's factual determination under the more rigorous de novo standard, we find any alleged Massiah violation to be harmless error.
 
 
 11
 The Sixth Amendment right to counsel is violated when the government deliberately elicits incriminating statements from a defendant after he has been indicted and in the absence of his counsel. Massiah v. United States, 377 U.S. 201, 206 (1964). In United States v. Henry, 447 U.S. 264, 274 (1980), the Supreme Court extended Massiah to apply to situations where the government intentionally creates a situation likely to induce a defendant to make incriminating statements without the assistance of counsel. The Sixth Amendment, however, is not violated when "by luck or happenstance--the State obtains incriminating statements from the accused after the right to counsel has attached." Maine v. Moulton, 474 U.S. 159, 176 (1985). Thus, "a defendant does not make out a violation [of his Sixth Amendment] right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).
 
 
 12
 In the instant case, both Wells' trial and appellate counsels conceded that Steriotti was not a government agent prior to November 1, 1983, the date of Steriotti's meeting with Inspector Erdelatz. Before then, Steriotti was not acting under the government's instructions in listening to Wells' statements, cf. Henry, 447 U.S. at 270; indeed, the record suggests that the San Francisco police were not even aware during this time that Steriotti had information about Wells' case. Therefore, any statements made by Wells to Steriotti between late September and November 1, 1983 were admissible. These statements included Wells' most damaging statements to Steriotti. We affirm the trial court's finding that Steriotti was not a government agent for the period up to November 1, 1983.
 
 
 13
 As for the period after November 1, even if we assumed that the trial court erred in admitting Steriotti's testimony regarding statements made by Wells, the harmless error doctrine applies. See LePage v. State of Idaho, 851 F.2d 251, 253 (9th Cir.) (harmless error doctrine applies to Massiah violations) (citing Milton v. Wainwright, 407 U.S. 371 (1972)), cert. denied, 488 U.S. 972 (1988). Here, the evidence gathered by Steriotti after November 1 was merely cumulative. Even if Steriotti's testimony had been limited to statements made by Wells prior to November 1, the verdict would have been the same because, coupled with the other evidence, Wells' voluntary confession and statements during that time established his guilt beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967). Accordingly, we conclude that Wells' confession and statements prior to November 1 renders any alleged Massiah violation harmless error and, thus, affirm the district court's denial of relief on the basis of a Massiah violation.
 
 II
 
 14
 Wells also argues that his Sixth Amendment right to confrontation was violated because the trial court prohibited cross-examination regarding the plea bargain discussions between Wolkin and Carbone, due to Steriotti's attorney-client privilege. Wells contends that Steriotti waived any attorney-client privilege when he authorized his attorney to disclose communications to Carbone. Cross-examination on this subject, Wells believes, would have helped him establish that Steriotti was a government agent when he was gathering information and the nature of Steriotti's motivations for testifying.
 
 
 15
 Under California law, one waives the attorney-client privilege if one discloses a significant part of the communication or consents to such disclosure to a third person. Cal.Evid.Code § 912(a) (West Supp.1991). California Evidence Code § 952, however, allows an attorney to disclose confidential attorney-client communications "to no third persons other than those ... to whom disclosure is reasonably necessary for ... the accomplishment of the purpose for which the lawyer is consulted...." Cal.Evid.Code § 952 (West Supp.1991).
 
 
 16
 The district court found that the state trial court erred in ruling that Steriotti's instructions to his attorney to reveal their communications to prosecutor Carbone was privileged, but found no error in the state court's prohibition of cross-examination regarding the contents of the communications. The district court ultimately denied Wells' petition because it concluded that the error was harmless. We find it unnecessary to determine upon review whether the state trial court erred in upholding Steriotti's attorney-client privilege in these circumstances, because we also find that any error was harmless.
 
 
 17
 A more difficult question is presented by whether Wells' Sixth Amendment rights override Steriotti's claim of privilege. The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant to confront the witnesses against him or her. Davis v. Alaska, 415 U.S. 308, 315 (1974). This right to confrontation embodies the right to cross-examine adverse witnesses, thereby allowing the defendant to impeach a witness or to show a witness' possible biases, prejudices, or self-interest in testifying. Id. at 316; Chipman v. Mercer, 628 F.2d 528, 530 (9th Cir.1980). Because the issue of whether a trial court has violated the Confrontation Clause is a question of law involving the accused's right to a fair trial, we review de novo. United States v. Jenkins, 884 F.2d 433, 435 (9th Cir.), cert. denied, 110 S.Ct. 568 (1989). The trial court, however, has broad discretion to impose reasonable limits on cross-examination, Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); thus, we normally will hold the trial court violated the Sixth Amendment only if the jury was denied " 'sufficient information to appraise the biases and motivations of the witness.' " Jenkins, 884 F.2d at 436 (quoting United States v. McClintock, 748 F.2d 1278, 1290 (9th Cir.1984), cert. denied, 474 U.S. 822 (1985)).
 
 
 18
 Notwithstanding the limitations imposed on the cross-examinations of Steriotti and Wolkin, we find that these cross-examinations satisfied the constitutional purpose of providing Wells the opportunity to establish Steriotti's bias or motivation in testifying. Wells cross-examined Steriotti and his attorney at length in order to show Steriotti's possible biases and motives for testifying from which the jury could draw inferences relating to his reliability as a witness. For example, Steriotti was cross-examined about his hopes of benefitting from providing information on Wells and about charges against him which had been dismissed in the past in exchange for providing information regarding other criminal suspects. Steriotti admitted that it was possible that he had been seeking some favor or reward when he approached police inspectors about Wells' case. He further testified about his concerns for his safety within the California state prison system and about Inspector Erdelatz' assurances that he would do his best to see Steriotti stayed alive if Steriotti gave the police any information. Although the police did not make any promises, Steriotti said that he expected he would not have to serve any time in the state prison system; on the other hand, he did not anticipate that his charges would be reduced further or that he would do less time for testifying against Wells. At another point, he related his expectation of receiving involuntary manslaughter rather than the voluntary manslaughter he ultimately received; he clarified, however, that this was not the sentence he was trying to get in return for testifying against Wells.
 
 
 19
 Furthermore, through the cross-examination of Wolkin, the jury also learned that plea negotiations took place between Wolkin and Carbone, and they learned about the results of the negotiations as well.[1] The only areas barred from cross-examination, then, were the actual content of Steriotti's discussions with his attorney on the subject of plea negotiations, this same material as discussed by Steriotti's attorney and the prosecutor, and whether Steriotti's testimony was taken into account in arriving at the disposition of his case. In light of the extensive cross-examinations of Steriotti and Wolkin, any error in the upholding of the privilege was harmless beyond a reasonable doubt. Van Arsdall, 475 U.S. at 684.
 
 
 20
 Insofar as Wells sought to use the privileged information to establish that Steriotti was a police agent at the time he elicited incriminating statements from Wells, we have concluded earlier that Wells was not a police agent at least for the period prior to November 1. Even if Wells, by cross-examining Steriotti and his attorney about Steriotti's plea negotiations, could have established that Steriotti was a government agent after that date, Wells' confession and statements prior to November 1 would have led to the same guilty verdict.
 
 
 21
 Accordingly, we affirm the dismissal of Wells' habeas corpus petition.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In addition, the trial court initially ruled that the attorney-client privilege had been waived as to whether or not Steriotti had directed Wolkin to negotiate in his behalf to obtain reduced charges in exchange for his testimony against Wells. The testimony of Carbone and Wolkin on this issue at the evidentiary hearing established that Steriotti had obtained no benefits in exchange for his testimony
 Cpyright (c) West Group 1998 No claim to original U.S. Govt. works